UNITED STATES DISTRIC COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA

                          - v -

HESHL ABRAHAM,

                    Defendant.

**20-CR-411 (RA)**

**DEFENDANT HESHL ABRAHAM'S SENTENCING MEMORANDUM**

STEVEN Y. YUROWITZ
WILLIAM J. DOBIE
NEWMAN & GREENBERG LLP
*Attorneys for Defendant Heshl Abraham*

950 Third Avenue
New York, New York 10022
(212) 308-7902

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................................ 1

INTRODUCTION ................................................................................................................. 1

BACKGROUND .................................................................................................................. 3

"Give a Man a Fish, and You Feed Him for a Day, Teach a Man to Fish, and You Feed
Him for a Lifetime" ........................................................................................................... 5

OFFENSE CONDUCT ........................................................................................................ 12

GUIDELINES .................................................................................................................... 12

RESTITUTION .................................................................................................................. 13

THE §3553(a) FACTORS .................................................................................................. 14

    1.   Nature and Circumstances of the Offense, and the History and Characteristics of the
    Defendant (§3553(a)(1)) ................................................................................................. 15

    2.   Traditional Sentencing Goals (§3553(a)(2)) ................................................................. 16

    3.   The Kinds of Sentences Available (§3553(a)(3)) ........................................................... 17

    4.   USSG and Departure Grounds (§3553(a)(4) and (5)) ..................................................... 18

    5.   Sentencing Disparity (§3553(a)(6)) .............................................................................. 18

    6.   Restitution (§3553(a)(7)) ............................................................................................. 18

CONCLUSION .................................................................................................................. 19

**PRELIMINARY STATEMENT**

This sentencing memo is submitted on behalf of defendant Heshl Abraham ("Heshl," to distinguish him from his brothers), who is scheduled to appear before Your Honor for sentencing on June 27, 2024, upon his plea of guilty before Your Honor on October 26, 2023, to a single count of conspiracy to commit wire fraud, in violation of 18 U.S.C. §371. This memorandum is intended to assist the Court in determining the appropriate sentence to impose on Heshl, a father of six with no prior criminal record.

**INTRODUCTION**

Heshl is the first to admit, although ashamed to do so, that his conduct in this case was outright "theft" from Amazon, and he deserves some form of punishment for it. PSR ¶42. At the same time, the letters submitted in support of him demonstrate three important facts that we respectfully submit should guide the Court's discretion in imposing a sentence that is fair and consistent with the 3553(a) factors.

First, ███████████████████████████████████████████
████████████████████████████████████████ ██████
████████████████████████████████████████████
████████████████████████████████████████████
███████████████████████████████████████

███████████████████████████████████████████████
███████████████████████████████████████████████
███████████████████████████████████████████████
██████████████

██████████████████████

In counsel's view, ████████████████████████ independently counsel for a non-incarceratory sentence, e.g., a sentence of home-confinement.

But ████████████████ are only part of the picture. Not only is Heshl a wonderful husband and father ████████████████████████, he is an exemplary member of his community who constantly thinks of others. For example, Heshl is an active volunteer for organizations such as Chesed 24/7, which provides succor and support for the sick and their families when they are in hospitals. Exhibit B. In a similar vein, Heshl was the creator of a support group that provided business advice and guidance to individuals in the e-commerce industry so that they can earn an income and support their families. Numerous individuals describe how Heshl literally set them up in business or saved their business from failing. Exhibit C.

Finally, the bulk of the money Heshl realized from this offense was given away to charity. Exhibit D.[2] True, his misguided motivations do not by any means justify his actions, but they do provide corroboration for the fact that Heshl did not commit this offense out of greed. Indeed, from the time of his conduct until today, Heshl has lived modestly in a small rental apartment with his ever growing family.

In sum, under the totality of circumstances, and in satisfaction of the parsimony clause, we submit that the Court should impose a sentence of home confinement ████████████ ████████████████████████████████ but still receive punishment for his conduct.

---

[1] ███████████████████████████████████████████████████████████
██████████

[2] Exhibit D consists of a letter from the head of the organization that was the largest recipient of Heshl's largesse, as well as a printout from Fidelity Charitable through which the donations were made..

**BACKGROUND**

As noted in the PSR, Heshl was one of many children in a large, close-knit family of modest means.  As described by his former teacher Rabbi Jacob Lebovits, a dean at Yeshiva Bais Hillel, Heshl is an "exceptionally warm decent and wonderful human being."  Rabbi Lebovits explains that one of Heshl's admirable qualities is his consistency, in which he was always there to be a "true friend to the needy, the ill and the vulnerable."  Exhibit E (Letter of Rabbi Jacob Lebovits).

After going through the yeshiva system, at the age of 24, Heshl married Lifsha Abraham, and together they have six children, who range in age from 1 to 11 years old.  Heshl is and has been a very hands-on parent to his young children, ████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████ ███████████████

████████████████████████████████████████

---

[3] Rabbi Katz's letter is written in Hebrew.  Counsel who is fluent in Hebrew has provided the Court with an English translation of the letter.

███████████████████████████████████████████████

███████████████████████████████████████████████

████████████████████████████████

As described by his cousin Mayer Katz, Heshl is the ideal father and husband. As Mayer describes it, "[w]herever Heshl is, the air just gets lighter, the environment more accepting and the tone softer." No matter how stressful the circumstances, Heshl remains on call throughout. Mayer also describes how Heshl treats Lifsha with the "utmost respect" and he treats her like a queen in all their interactions. The same devotion is brought to Heshl's parenting: "Heshl is the kindest father I know! He's so connected with his kids and connects to them, believes in them and parents his gems with respect, kindness and love!" Letter of Mayer Katz.

### "Give a Man a Fish, and You Feed Him for a Day, Teach a Man to Fish, and You Feed Him for a Lifetime"

Heshl's essence is that he is a giver who derives extreme satisfaction from helping others. Among givers there are different levels. The above quote embodies Heshl's perspective on life. It is not enough to make a transitory gift to someone; to truly help in a meaningful way, one has to give the recipient the tools to become self-sufficient.

Like many others in his Hasidic community, Heshl did not pursue a higher education degree for religious reasons. Providing for a large family, as is typical in his Hasidic community, means that wage earners like Heshl tend to go in a more entrepreneurial direction and try to run some sort of business. E-commerce sites such as Amazon provide an attractive opportunity for entrepreneurial individuals in his community to build businesses and earn a living by selling products online. As the largest name in the industry, Amazon has immense market power and can seem to act, at times, with impunity. Its mercurial control over its platform has led to

arbitrary actions such as closed accounts and frozen monies, with sometimes devastating consequences to the affected businesses and employees (and families).

Heshl long ago recognized that the best way for people to survive and succeed in this environment was to pool resources and knowledge.  As a result, Heshl created a chat group "Seller Central Help" (SCH) with at times over 800 members, which includes in its ranks some of the Amazon platform's most prominent sellers.  Heshl's motto in creating SCH was simple: "You don't lose by helping others win."

As described by Tuvyah Schleifer, "[t]hrough SCH, Heshl has consistently served as a guiding light, facilitating valuable introductions, sharing invaluable insights, and extending assistance during challenging times. His authentic commitment to disseminating knowledge and providing words of encouragement has created a significant positive ripple effect, influencing numerous individuals within the SCH network and, consequently, resonating throughout the broader community of Amazon sellers."  Exhibit C (Letter of Tuvyah Schleifer).

But Heshl did not stop with this forum.  Heshl would often provide one-to-one, hands-on business advice to sellers on how to start and improve their businesses.  As Max Hauer, CEO of a software company that aids Amazon sellers, writes

> One particular instance stands out and exemplifies Mr. Abraham's character. A client of ours, a business owner with a substantial family to support and a workforce of 25, was on the brink of losing his Amazon business. This would have had devastating consequences, not just for the owner, but for his employees and their families as well. Mr. Abraham, understanding the gravity of the situation, stepped in voluntarily and without any expectation of compensation. His expertise in identifying and rectifying operational and financial inefficiencies was nothing short of a lifeline for this business. Today, thanks to Mr. Abraham's altruistic intervention, this company is not only surviving but thriving. They stand as one of our most successful clients.

Exhibit C (Letter of Max Hauer).  Similarly, Naftaly Soifer, an eCommerce business owner, writes about the interactions he had with Heshl when he was starting out:

> at the time I was completely new to the industry and was looking out for anyone that can help me with any tips or advice on the business end. That is how I got to know Heshl via some chat groups and networking events in the ecommerce space.
>
> I cannot express enough how exceptionally helpful Heshl was in times of need, before I met him face to face for the first time, he had already helped in the different areas that I had asked for, from small questions, to lengthy discussions, he was just there to help.
>
> Not knowing who I was, he was just there and willing to answer any question that I had, or provide any tip that can be helpful, in a way that I rarely see of anyone anywhere out there, if seen at all.

Exhibit C (Letter of Naftaly Soifer). Moreover, while many would charge for the invaluable consulting services that Heshl would provide, Soifer describes how after meeting Heshl in person for the first time he expressed his appreciation to Heshl, and Heshl modestly demurred stating, "No, there is nothing to thank me for, this is why we are here." *Id.*

Moses Kohn had a similar experience. He describes how Heshl helped him set up his business so that he could support his large family:

> I first heard about Heshl when I started selling on Amazon. I was unfamiliar and new to Amazon's marketplace and was looking for help. After one phone call to Heshl I was not alone anymore in my new endeavor. Every step of the way whether it was filling out forms for approvals, sourcing and choosing products or perfecting pricing, Heshl was at my side like a father and a partner giving me all the advice I needed and looking out only for my best interest, all for the price of $0. It didn't matter how many phone calls I made to him, or how many times I asked him to come down to my office to actually show me hands on how to do something – he never refused me and he made me feel comfortable time and time again, inviting me to ask anything necessary.

*Id.* (Letter of Moses Kohn). Sam Weingarten, the owner of a successful Amazon business, notes that it was Heshl's business platform that enabled his company to get its software product out in the industry, and it was all offered to them gratis. Something that Weingarten describes as a "lifesaver" since they were at a very early stage and could not afford additional expenses. "Today, thanks to Mr. Abraham's selfless intervention, this company not only survives but thrives." *Id.* (Letter of Sam Weingarten). David Stern describes how he met Heshl through the

chat and after a number of encounters over the group they have become really good friends. Stern notes Heshl's devotion to helping others: "What was interesting to me, however, was that whenever I would post something or ask anything on the group not only would Heshel reply on the group with an answer but he would private message me and help me with the resolution until my issue was completely resolved."  Exhibit C (Letter of David Stern).

Numerous additional letter writers express similar sentiments.

- Letter of Efraim Friedman (Heshl "has been a constant source of support and guidance, not only for me but for many others in the Amazon business community. Heshl has generously dedicated his time and efforts to helping others succeed. I can personally attest to the invaluable assistance and mentorship he has provided in my own Amazon journey."   Heshl "goes above and beyond to answer questions, offer guidance, and provide one-on-one support. His humility and genuine desire to see others thrive have set a shining example for all of us. Heshl's impact extends beyond our WhatsApp group; he selflessly devotes his time to helping others.")

- Letter of George Grunfeld ("While I have not had the privilege of meeting Mr. Abraham in person, we are active participants in the same industry and frequently engage in discussions within shared online forums and chat groups. Through these interactions, I have come to know Mr. Abraham as a person who consistently demonstrates a willingness to extend a helping hand to his peers, even in challenging circumstances. Mr. Abraham has, on several occasions, personally reached out to me to offer his expertise and assistance with difficulties I faced in my professional endeavors. His insights and guidance have proven invaluable, showcasing not only his deep understanding of our industry but also his genuine commitment to supporting others within the community.")

- Letter of David Spitzer ("Heshl has been a guiding force in my Amazon business journey, providing invaluable advice and assistance whenever I encountered challenges. His expertise, generosity, and willingness to lend a helping hand have been instrumental in my success in my Amazon business.")

- Letter of Israel Ungar ("Even though I never met Heshl in person yet, I have already gained so much from him. He helped me several times when I got stuck, and I gained a lot from the webinars he arranged with the best experts in the field, and through the WhatsApp group that he founded where 400 people share information and ideas to help each other . . . Heshl helps other people in the community with real passion like they are his brothers without being rewarded nor paid, but just because of his heart of gold.")

- Letter of Mordechai Kohn (Heshl is "always willing to lend a hand, offer advice, or make connections. He genuinely cares about people and wants to help. I myself was helped and guided by him countless times.")

- Letter of Shmuel Einhorn (Einhorn, a high school friend of Heshl and CEO of several eCommerce brands, writes: "One of Mr. Heshl Abraham's most remarkable qualities is his unwavering commitment to helping others succeed. He has consistently dedicated his time and intellect to devising innovative ways to support people in our community, from creating digital platforms to organizing local gatherings where individuals can connect and assist one another. A particularly memorable instance of Mr. Heshl Abraham's generosity and resourcefulness occurred during a difficult period in my life. When I found myself out of a job, Heshl was there to offer his support and counsel. He brainstormed various strategies to help me navigate that challenging time, showcasing his

genuine concern for my well-being. This was not an isolated act; Heshl has shown similar kindness and dedication to countless others in our community.")

- Letter of Ari Tahover (Tahover is the owner of an eCommerce business, and an individual, who together with Heshl, helped run SCH; "Heshl has dedicated his life for the years that I have been involved with him and made it his mission to help the community make a living by building businesses as well as placing hundreds of employees in these businesses. He was the pioneer of 'share everything', he shared his time and knowledge and pushed everyone with whom he came in contact with his groups and events to do the same, selflessness is truly his last name."  Mr. Tahover shares one such incident:  "when right before the 2018 holiday shopping season Amazon closed one of our listings, which meant a substantial loss in sales and profit for me. Heshl, who was running his own business at the time, took his time and spent a few hours on the phone with Amazon to get it resolved. I felt very guilty that he was spending so much of his precious time not stopping until Amazon reopened the listing, but he insisted on helping me.")

- Letter of Herschy Soffer (Herschy describes how Heshl guided him when he was at risk of losing significant market share:  "His guidance was invaluable, and thanks to his suggestions, I was able to regain my competitive edge and sustain my business.")

- Letter of Barry Leifer (Leifer was seeking assistance with his ecommerce business; "Hershel's reputation for expertise in this field preceded him, and upon our initial interactions, it became evident that his knowledge and support would be invaluable to me.  I was particularly drawn to Hershel's willingness to extend a helping hand when our business was struggling to turn a profit. Despite his busy schedule, Hershel graciously

offered his time and expertise to investigate the root causes of our financial challenges. He meticulously advised us on every step, patiently guiding us through strategies and solutions until, thankfully, our business began to see significant improvement.  What truly sets Hershel apart, however, is his unwavering dedication to our community. He consistently goes above and beyond to assist people with their business endeavors, charitable initiatives, and family needs. Whether it's providing guidance on entrepreneurial ventures or offering support during times of hardship, Hershel has proven himself to be an invaluable resource and a pillar of strength for many.")

- Letter of Joshua Ausch ("Hershel is well-known for his generosity and readiness to assist others, whether by alerting them to job opportunities or making introductions using his valuable connections. He is driven by a genuine concern for people, and his guidance and support to those using Amazon's platform were, to my knowledge, always given with the best of intentions, and always for free.")

- Letter of Moshe Rottenberg (Heshl "is always ready to lend a hand, whether it is through communicating job offering or making connections, motivated purely by his genuine care for people.")

- Letter of Aaron Bernath (Aaron is the owner of Barnetts Sweet Creations who states how he "witnessed up close how Heshl jumps in to help a business when they are in need of assistance" and how Heshl "helped my business tremendously many times with advice and support all for the sake of helping others without any intention of being rewarded!")

Heshl's help was not limited to business advice.  When his friend Solomon Rosenberg was going through a tough time in his life and marriage, it was Heshl who provided him with a

listening ear.  Letter of Solomon Rosenberg.  In view of Heshl's demonstrated record of helping others, it is little surprise that he is an active member of Chesed 24/7.

## OFFENSE CONDUCT

As noted above, and in his submission to probation, Heshl accepts full responsibility for his conduct, and he does not seek to defend it.  Several points are worth noting.  First, Heshl was by no means the mastermind of this scheme.  Indeed, as demonstrated by the government's submission dated June 5, 2024, as compared to his co-defendants, Heshl's restitution amount is 40% lower than his next culpable brother.[4]  Second, Heshl did not act out of greed.  He lived modestly both before and after his conduct.  Indeed, from the nearly $1.4 million that the government is seeking in restitution from Heshl, almost all of it was given to charity.  But Heshl is not seeking a pat on the back for giving to charity, and he understands that one does not get credit for contributing the proceeds of fraud to charity.  But it certainly sets him apart from those who steal for personal gain.  Nor did Heshl give this money for public acclaim.  On the contrary, as described by Rabbi Barzesky, the director who heads the largest recipient institution of Heshl's largese, Heshl informed the institution that he wanted no public recognition for the contribution.

## GUIDELINES

The PSR's USSG calculation is consistent with the parties' plea agreement, *i.e.*, a base offense level of 6, an additional 16 levels for loss based on a gain of $1.5 million to $3.5 million,

---

[4] In its sentencing submission as to Yoel, the government attributes certain statements to Heshl regarding the use of VPN's.  Heshl objected to these characterizations in his objections to the PSR.  To the extent that the Court intends to rely on this conduct, we dispute those characterizations, some of which are based on misattributions.  *See* Exhibit F (Objection Letter dated Jan 16, 2024 at ¶34).

and two levels for sophisticated means which after a reduction of 5 points for acceptance of responsibility, timely entering a plea, and his status as a zero-point offender produces a total offense level of 19, and a USSG range of 30 to 37 months.  Significantly, a review of the amounts attributable to Heshl in the Amazon Loss letter ($1,494,957.38) or the amounts sought by the government in restitution ($1,391,660.59) would produce a slightly lower loss figure of 14 levels, which would produce a total offense level of 17, and a USSG range of 24 to 30 months. Heshl is not seeking to challenge the USSG calculation agreed to in the plea agreement, but this lesser sentencing range is certainly a factor that the Court can consider under the §3553(a) factors.  Indeed, a sentence of 24 months is certainly consistent with the recommendation made by the Probation Office without the benefit of Heshl's sentencing submission and the mitigating circumstances noted in it.

## RESTITUTION

In its victim impact statement, Amazon's counsel seeks a restitution order that would hold all of the defendants jointly and severally liable for restitution to Amazon in the amount of $17,981,253.99.  See Letter of Scott Commerson and Adam Sgro to the Court (May 1, 2024) at 7.  Even assuming the Court were to order restitution in that total amount, Heshl respectfully submits that the restitution amount should be apportioned amongst the defendants based on the losses attributed to each of them.  *See* 18 U.S.C. 3664(h) ("If the court finds that more than 1 defendant has contributed to the loss of a victim, the court may make each defendant liable for payment of the full amount of restitution *or may apportion liability among the defendants to reflect the level of contribution to the victim's loss and economic circumstances of each defendant*.") (emphasis added)  Here, the Abraham brothers kept their business entities entirely separate and "work[ed] independently," and did not "pool profits and resources."  As a result,

13

each brother should only be responsible for the loss attributable to his own acts. *United States v. Studley*, 47 F.3d 569, 575 (2d Cir. 1995). The government appears to agree that restitution should be apportioned since in its June 5 letter, the restitution loss it attributes to Heshl, and advocates for is $1,391,600.

## THE §3553(a) FACTORS

After *United States v. Booker*, 543 U.S. 220 (2005), the Court's sentencing discretion is guided by the factors set forth in 18 U.S.C. §3553(a), only one of which is the USSG calculation. Application of all of the §3553(a) factors is governed by the overriding principle that the Court "shall" impose a sentence "sufficient, but not greater than necessary" to fulfill the purposes of the criminal law, as set forth in §3553(a)(2), one of which is "just punishment" for the offense. The §3553(a) factors also include the history and characteristics of the defendant, protection of the public from further crimes by the defendant, and the kinds of sentences available. These factors all weigh in favor of leniency for Heshl, a nonviolent first-time offender. *United States v. Arteca*, 411 F.3d 315, 323 (2d Cir. 2005) ("Although the court made a significant downward departure from the applicable Guideline range [at his original sentencing], we cannot say as a matter of law that the same [higher] sentence would have been arrived at had the court regarded the Guidelines as advisory rather than mandatory"); *United States v. Ranum,* 353 F. Supp. 2d 984 (E.D. Wis. 2005).[5]

---

[5] "[U]nder § 3553(a)(1) a sentencing court must consider the 'history and characteristics of the defendant.' But under the guidelines, courts are generally forbidden to consider the defendant's age, U.S.S.G. §5H1.1, his education and vocational skills, §5H1.2, his mental and emotional condition, §5H1.3, his physical condition including drug or alcohol dependence, § 5H1.4, his employment record, §5H1.5, his family ties and responsibilities, §5H1.6, his socioeconomic status, §5H1.10, his civic and military contributions, §5H1.11, and his lack of guidance as a youth, §5H1.12. The guidelines' prohibition of considering these factors cannot be squared with the §3553(a)(1) requirement that the court evaluate the 'history and characteristics' of the defendant. The only aspect of a defendant's history that the guidelines permit courts to consider is criminal history. Thus, in cases in which a defendant's history and character are positive, consideration of all of the §3553(a) factors might call for a sentence outside the guideline range." Id. at 986.

1.   **Nature and Circumstances of the Offense, and the History and Characteristics of the Defendant (§3553(a)(1)).**

Heshl has in no uncertain terms acknowledged his guilt and the seriousness of his conduct.  Heshl does not seek to offer any excuse or justification for the conduct.  Without intending to minimize Heshl's conduct, there are certain factors that the Court should take into account in considering the nature and circumstances of the offense.  First, we believe that even the government would acknowledge that Heshl was not the prime mover in this conduct.  He was not the one who first initiated the conduct.  And, in terms of profits, he was the lowest on the totem pole.  Moreover, it is fair to say that Heshl did not act out of greed, as confirmed by the fact that he gave the majority of the money to charity, and otherwise Heshl led a modest lifestyle.  In other words, while the crime was serious, there are certainly mitigating factors in Heshl's favor.  *United States v. Adelson*, 441 F. Supp. 2d 506, 514 (S.D.N.Y. 2006) ("This elementary principle of weighing the good with the bad, which is basic to all the great religions, moral philosophies, and systems of justice, was plainly part of what Congress had in mind when it directed courts to consider, as a necessary sentencing factor, 'the history and characteristics of the defendant.'").

Moreover, §3553(a)(1) directs a court to not simply look at the defendant's offense but his entire makeup.  ████████████████████████████████████████

████████████████████████████████████████████████████

███████████████  ██████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████  *See United States v. White*, 301 F. Supp. 2d 289 (S.D.N.Y.

2004) (granting downward departure for defendant who was guardian and sole provider for six children); *United States v. Rose*, 885 F.Supp. 62, 66 (E.D.N.Y. 1995) (imprisoning the defendant would have grave and irreversible consequences for the extended family); *United States v. Prosperi*, 686 F.3d 32, 34, 40, 50 (1st Cir. 2012) (affirming seven-year downward variance to arrive at a sentence of six months' home confinement in $5 million fraud case based on defendant's care for family and good works).

Moreover, Heshl is an eminently qualified candidate for such a downward variance since he is an extraordinarily good person who has assisted many in the community to put themselves on their feet by earning a respectable living. As described in the many letters above, this was done without any expectation of compensation, but rather to assist another human being. Likewise, this desire to help others is reflected Heshl's work on behalf of Chesed 24/7 assisting others that are going through a medical crisis. A lifetime of extraordinary good deeds like Heshl's was even a traditional and well-established ground for a downward departure (*see United States v. Woods*, 159 F.3d 1132, 1136-37 (8th Cir. 1998) (affirming downward departure where the defendant "brought into her own home two troubled young women," paid their private school tuition and helped them to become "productive members of society"); *United States v. Rioux*, 97 F.3d 648, 663 (2d Cir. 1996) (upholding downward departure based on, *inter alia*, defendant's charitable and civic good deeds, including his fundraising for the Kidney Foundation)), and it is certainly entitled to weight in considering whether to grant a downward variance.

## 2. Traditional Sentencing Goals (§3553(a)(2)).

Any sentence imposed by the Court will necessarily include serious financial penalties of both forfeiture and restitution, totaling in the millions of dollars. Since the money that

Heshl "gained" from the offense was largely donated to charity, he has very little in the way of any savings or other assets from which he can pay these penalties, as confirmed by the PSR. Whether or not he is sentenced to prison, Heshl is going to have to satisfy his financial obligations in this case. It will not be easy for him to do. Somewhat perversely, had Heshl used his proceeds to buy real estate or luxury items, as many criminals do, his burden in paying these penalties would be considerably lessened.

Moreover, even under Heshl's proposed outcome, he recognizes that the Court will likely impose a significant sentence of home confinement; such a sentence, while certainly preferable to incarceration, is not by any means a walk in the park. Indeed, in a Staff Discussion Paper published by the United States Sentencing Commission, Staff noted that "Offenders feel that home confinement is at least, if not more, punitive than prison." USSC Staff Discussion Paper, "Sentencing Options Under the Guidelines" at 20 (*citing* Jan Petersilia, *When Probation Becomes More Dreaded Than Prison*, Federal Probation, March 1990 at 23-7). As a result, any sentence imposed along the lines advocated by the defense will necessarily reflect the seriousness of the offense and the traditional goals of sentencing of retribution and deterrence. ██████████████████████████████████████████

██████████████████████████████

### 3.    The Kinds of Sentences Available (§3553(a)(3)).

Despite his Guideline level, there is no requirement that the Court impose a term of incarceration, as no mandatory minimum applies. As a result, the Court is free to fashion a sentence that will accomplish the traditional goals of sentencing, ██████████████████████ ██████████████    ████████████████████████████████, including his

extraordinary good deeds, as detailed above, he is an appropriate candidate for a downward departure or variance which would make him eligible for a sentence of home confinement.

**4.    USSG and Departure Grounds (§3553(a)(4) and (5)).**

The parties agree with the USSG calculation set forth in the PSR.  The Second Circuit has recognized that even though under §5H1.6 family circumstances are not "ordinarily relevant" in determining whether a departure is warranted, a sentencing court is still required to consider "the history and characteristics of the defendant" "in determining the particular sentence to be imposed," and in "the post-*Booker* advisory Guidelines regime, the Guidelines limitations on the use of factors to permit departures are no more binding on sentencing judges than the calculated Guidelines ranges themselves." *United States v. Thavaraja*, 740 F.3d 253 (2d Cir. 2014) (upholding downward variance from 240 months to 108 months based on family circumstances). ███████████████████████████████████████████

███████████████████████

**5.    Sentencing Disparity (§3553(a)(6)).**

None of his co-defendants have been sentenced at this point, but as noted above it is fair to say that in terms of levels of culpability, Heshl is the least culpable in terms of the dollar loss. As a result, regardless of the ultimate sentences meted out for his co-defendants, there would be nothing disparate in imposing a sentence of home confinement upon Heshl.

**6.    Restitution (§3553(a)(7)).**

Heshl's ability to make any meaningful restitution in this case would be more likely made possible with the imposition of a sentence of home confinement that would at least permit him to work, and thereby earn a living.

18

## CONCLUSION

Heshl Abraham stands humbly and apologetically before the Court, ready to receive his punishment. Heshl is anxious to make amends for his conduct and hopefully put this embarrassing episode behind him. For the reasons explained above, Heshl respectfully requests the Court to impose a non-incarceratory sentence, such as home confinement. But whatever the Court decides as far as his sentence, Heshl will be left with a crushing debt of millions of dollars to both Amazon and the Government, which Heshl intends to pay no matter how long it takes. ████████████████████████████████████████

████████████████████████████████████

Dated: New York, New York
        June 14, 2024


                                        Respectfully submitted,

                                        NEWMAN & GREENBERG LLP

                                        *Attorneys for Defendant Heshl Abraham*


                                        By: _____
                                              Steven Y. Yurowitz
                                              William J. Dobie

                                        950 Third Avenue - 31st Floor
                                        New York, New York l0022
                                        (212) 308-7900