

U.S. Department of Justice

*United States Attorney*
*Southern District of New York*

---

*The Jacob K. Javits Federal Building*
*26 Federal Plaza*
*New York, New York 10278*

June 21, 2024

**By ECF**

The Honorable Ronnie Abrams
United States District Judge
Southern District of New York
Thurgood Marshall United States Courthouse
40 Foley Square
New York, New York 10007

    Re:    *United States v. Heshl Abraham,* S1 20 Cr. 411 (RA)

Dear Judge Abrams:

    The Government respectfully submits this letter in advance of the sentencing of Heshl Abraham on June 27, 2024. The defendant, along with his three co-defendants, participated in a multi-year scheme to defraud online retailer and e-commerce platform Amazon.com by inducing its automated systems to accept excessive shipments of goods it had never ordered, often at inflated prices it had not agreed to, or substituted different (inferior) products for those ordered. Often the defendant engages in several of deceptive practices at the same time. As set forth in the Presentence Investigation report ("PSR") and in the plea agreement, the stipulated Guidelines range is 30 to 37 months' imprisonment.[1] The Government respectfully submits that a sentence at the low-end of the stipulated Guidelines would be sufficient, but not greater than necessary, to reflect the goals of sentencing.

    **A. Offense Conduct**

    The defendant was charged, along with three co-defendants (three of his siblings), with participating in a wide-ranging scheme to defraud Amazon.com, the online retailer and e-commerce platform. (PSR ¶ 21). From at least 2017 through at least 2019, the defendant and his co-conspirators registered and opened third-party seller and vendor accounts on Amazon's online platform to sell consumer goods. *Id.* The defendant and his co-conspirators defrauded Amazon in at least two different ways, which were frequently combined. First, the defendants engaged in overshipping (or "overage") fraud: the defendants confirmed purchase orders from Amazon for

---

[1] As discussed below, this stipulated range is calculated under the revised November 1, 2023, edition of the Unites States Sentencing Guidelines.

specific goods (identified by a unique alphanumeric identified called an "ASIN"), in specific quantities, specific configurations, and at specific prices, and then shipped vastly greater quantities of the product. (PSR ¶ 25). Second, the defendants engaged in product substitution or unit manipulation: the defendants confirmed purchase orders from Amazon and then edited the product pages that corresponded to the items Amazon had agreed to purchase. The edits to the product page either substituted a different product altogether or edited the configuration of a product in a manner that drastically inflated the price (instead of a 10-pack for $10, a single item for $10). The defendants frequently then overshipped the manipulated or substituted product. (PSR ¶ 21).

Each defendant engaged in these deceptive practices to varying degrees. Heshl Abraham engaged in both product substitution and overshipping. For instance, the defendant confirmed a purchase order for a single unit of particular designer perfume, at a price of $289.78. (PSR ¶ 23). The defendant subsequently edited the product page corresponding to this item to reflect a plastic beard trimming tool for $289.78. The defendant then overshipped and invoiced Amazon for 927 units of the beard trimmer, at a cost of $248,915.84. Similarly, as reflected in the Victim Impact Statement,[2] Heshl Abraham, operating a vendor account associated with the company "Cuebite" (code CUEBK), agreed to sell Amazon 576 units of Acqua Di Parma Acqua Nobile Eau de Toilette Spray, Magnolia, 4.2 Ounce, a cost of $158.13 for a 50-pack. After accepting this purchase order, Heshl Abraham altered the product page corresponding to this item completely to reflect $158.130 for a single package of "Purifying Peel off Black Mask" (an acne treatment), and then shipped Amazon 2791 units at a cost of $441,340.83. As set forth in the Government's supplemental sentencing submission dated June 5, 2024 (ECF No. 189, at 4), Amazon's losses from Heshl Abraham's combination of product substitution/overshipping for just the *five* transactions analyzed therein total $1,271,261.12.[3]

The defendant and his co-defendants maintained an ongoing WhatsApp in which they discussed at length their "business" with Amazon and how best to defraud Amazon.[4] They also discussed mutual acquaintances who engaged in similar types of fraud against Amazon. These communications make clear that the defendants knew their overshipping and unit substitution was wrong, that it violated the policies they had agreed to abide by when they agreed to do business with Amazon, and that Amazon would cease doing business with them if it discovered their fraudulent misconduct.

In a typical exchange, set forth below, the defendant discussed with his co-defendants how he built these deceptive practices into his business logistics. For instance, he advised his co-

---

[2] Victim Losses with Attribution, attached hereto as Exhibit 6, attached hereto as Exhibit 6. Also filed as Exhibit 6 in Government Supplemental Sentencing Letter, ECF No. 189.
[3] See Government Supplemental Sentencing Letter, ECF No. 189 at p. 4.
[4] All citations to texts messages below are imaged excerpts from an Excel extraction produced under USAO_00006030. The defendants' WhatsApp text group consists of a mix of text messages and lengthy voice memos, in English and Yiddish. As set forth below, where a column is populated with a .opus file, a translated transcription of the voice memo contained in the .opus file appears in the "text" field. Text in red reflects a draft translation and/or paraphrase of text in Yiddish. The numbers in the column on the left reflect a chronological order to the messages; certain messages have been paraphrased, as denoted by square parentheticals.

defendants regarding how he tracked his proceeds from the fraud and ensured that he knew what his profit from overshipping would be week-to-week:

| | | | | | |
|---|---|---|---|---|---|
| 190 | 113518 | ▇▇▇ @s.whatsapp.net Heshl Abraham | I made this in the same google sheet from the vendor mapping calculator list, you just paste in the PO file in the yellow columns every time you get new POs and the rest is auto filled, here u see your total cost and total profit, and in the column "received cases" i change the quantity to the amount i wanna overship, and the calculations are updating accordingly... | | 3/20/2018 5:19:08 AM(UTC+0) | |
| 191 | 113519 | ▇▇▇ @s.whatsapp.net Heshl Abraham | then i copy all and save it to excel for my records, and next time i just reuse the same sheet for new pos | | 3/20/2018 5:19:47 AM(UTC+0) | |
| 192 | 113520 | ▇▇▇ @s.whatsapp.net Zisha ▇▇▇ | I made the exact same file and I call it weekly vendor pos and every week is another tab so I know what's going on and my profits | | 3/20/2018 5:20:16 AM(UTC+0) | |

Heshl Abraham, in particular, often expressed a desire to grow his fraudulent business with Amazon through automation and hiring workers overseas. With both, however, he expressed concern that anyone he employed might get a window into his deceptive practices. For instance, in an extended discussion with his co-defendants regarding whether to start using Amazon Direct Fulfillment, an automated shipping and invoicing vendor, he stated the following:

| | | | | | |
|---|---|---|---|---|---|
| 420 | 122493 | ▇▇▇ @s.whatsapp.net Heshl Abraham | so 500 times 50 cents is $250 a month, its very nice, why shouldn't we do it that way. The first 500 order goes per order and keep going and that will go up to a fixed amount | | 5/17/2018 2:40:17 AM(UTC+0) | a884024e-e0ef-462a-9dfe-c1714710931f.opus |
| 421 | 122494 | ▇▇▇ @s.whatsapp.net Zisha ▇▇▇ | I agree it's much faster from using ppl for it, more accurate and much better, and saves you money and you can have more time to actually make money.. I do want and do DF and I need a negotiation thingy on that... for other marketplaces I don't need him!!! | | 5/17/2018 2:40:32 AM(UTC+0) | fe39c22f-0b2c-40f8-9931-47934d96f81f |
| 422 | 122495 | ▇▇▇ @s.whatsapp.net Heshl Abraham | What about confidentially? Who has access to the accounts? And can see exactly how much I overship? | | 5/17/2018 2:43:11 AM(UTC+0) | ec6d2be6-eb1c-48f2-b96e-566fee6750eb |
| 423 | 122496 | ▇▇▇ @s.whatsapp.net Y.A. | I like that | | 5/17/2018 2:44:21 AM(UTC+0) | 45bc69b2-74cb-4540-9cba-05c56509481d |

In his conversations with his co-defendants, Heshl Abraham appeared more afraid of getting caught than his co-defendants and evinced a greater willingness to defraud Amazon through price and product manipulation than through overshipping when the latter appeared to become more difficult to execute undetected. The defendants frequently shared information from acquaintances who engaged in similar fraud and discussed on how to avoid getting caught. For instance:

| 512 | 123825 | ████ @s.whatsapp.net Shmule | regrades from ████_x005F_xD83E__x005F_xDD2B_<br>he hates vendor OMG<br>he says someone that is still over shipping is out of his mind _x005F_xD83D__x005F_xDE14_ | | 5/25/2018 2:10:06 PM(UTC+0) | |
| 513 | 123826 | ████ @s.whatsapp.net Heshl Abraham | Why? What's wrong with overshipping? | | 5/25/2018 2:15:51 PM(UTC+0) | 0c935ca4-ae89-426a-9c97-8664b62d0cfe |
| 514 | 123827 | ████ @s.whatsapp.net Shmule | Because he says you will end up losing they shipping back for a lot people and holding the money | | 5/25/2018 2:16:44 PM(UTC+0) | |
| 515 | 123828 | ████ @s.whatsapp.net Heshl Abraham | Wow guess will need to stop and adjust the pricing instead.. | | 5/25/2018 2:17:31 PM(UTC+0) | 9566aa7d-8caa-4e87-a551-bb92eade317d |

In the same conversation regarding an acquaintance who got caught overshipping, Heshl Abraham asked his co-defendants about potential ways to ensure receipt of payment for overshipping before Amazon shut down the account:

| 557 | 123870 | ████ @s.whatsapp.net Shmule | He didn't over shipped means something else | | 5/25/2018 2:28:37 PM(UTC+0) | c9df3735-c4d8-4a4f-899c-de8ea809c885 |
| 558 | 123871 | ████ @s.whatsapp.net Heshl Abraham | so how long does it take before they catch on and take back the account | | 5/25/2018 2:29:22 PM(UTC+0) | 68ad1294-017c-446c-9039-749501a6439e.opus |
| 559 | 123872 | ████ @s.whatsapp.net Zisha | What did he answered them ? | | 5/25/2018 2:29:32 PM(UTC+0) | d42de299-f1ed-471c-adf2-06e058535b67 |
| 560 | 123873 | ████ @s.whatsapp.net Heshl Abraham | what if we change the terms of the invoice to start sending money within 14 days is that better? | | 5/25/2018 2:29:36 PM(UTC+0) | b626e72c-e8b2-4957-a254-2d464c53ec8e.opus |
| 561 | 123874 | ████ @s.whatsapp.net Shmule | No idea | | 5/25/2018 2:32:37 PM(UTC+0) | 5b1666b1-ac68-4758-b26d-f0e450c55592 |
| 562 | 123875 | ████ @s.whatsapp.net Zisha | Officially Zolly said that Nuti only overships things that are only over 5000 so it was very good that he overshipped anyway, but that doesn't make any sense now because he only had 1200 items, I don't know, sounds like he overshipped like crazy, anything whatever he was able to, I think he's made a few million from vendor, the guy abused it, not just abused hes probably the vendor who abused it the most, wow | | 5/25/2018 2:33:16 PM(UTC+0) | 019a7857-9539-4db4-a70c-7e91e1e7bbed.opus |

In the same conversation, Heshl Abraham also discussed building the cost of potential charge backs into the price of goods sold to Amazon. By charging higher prices and overshipping, the defendants would still make a profit on the partial payments if full payment were to be denied:

| 577 | 123890 | ████ @s.whatsapp.net Zisha | He probably overshipped some over 8k | | 5/25/2018 2:41:42 PM(UTC+0) | |
| 578 | 123891 | ████ @s.whatsapp.net Heshl Abraham | What if we start creating new listing from china items that cost .39 cents a pc and listing it for 19.99 like this Open my favorite app! Don't wait to get more surprises:<br>https://m.dhgate.com/product/good-quality-3ft-6ft-10ft-nylon-woven-cords/256615716.html?invitorid=QbM7Nn91 | | 5/25/2018 2:42:15 PM(UTC+0) | ba267aa9-43ca-4625-90b6-4179ad2ab75e.thumb |
| 579 | 123892 | ████ @s.whatsapp.net Heshl Abraham | Then there's no risk even you overship 5000 units | | 5/25/2018 2:42:30 PM(UTC+0) | |

The defendants, especially Heshl Abraham, frequently discussed how other acquaintances were conducting their own fraudulent overshipping schemes against Amazon. For instance, as set forth below, the defendant agreed with his co-defendant, Yoel Abraham, that building a real business was irrelevant, as long as overshipping provided the opportunity to defraud Amazon profitably. Heshl Abraham also extolled the virtue of trading information with others who were also defrauding Amazon to improve the profitably of the fraudulent scheme and avoid detection.

| | | | | | | |
|---|---|---|---|---|---|---|
| 724 | 125098 | ▮▮▮@s.whatsapp.net Heshl Abraham | He says right now when you just overship you don't have a busines, you just have a lottery, because by the end of the year they might block it because they didn't make any profit from your catelog. | | 5/31/2018 1:56:49 AM(UTC+0) | 25d66a2c-397b-42ce-be9f-1c0c21ed9efa |
| 725 | 125099 | ▮▮▮@s.whatsapp.net Heshl Abraham | True | | 5/31/2018 1:57:10 AM(UTC+0) | 6c48609f-dbd3-4427-9a03-8b428107d499 |
| 726 | 125100 | ▮▮▮@s.whatsapp.net Shmule | by making case packs its the same thing | | 5/31/2018 1:57:39 AM(UTC+0) | 7f741ca6-0138-4832-98a6-799f24310ea8 |
| 727 | 125101 | ▮▮▮@s.whatsapp.net Heshl Abraham | He said they closed his first account because he overhsippped like craaazy unbelievable, he sent then stuff that's going to expire a few hours before it's arriving to them _x005F_xD83D__x005F_xDE32_ they couldn't ship it back because he had NO RETURNS | | 5/31/2018 1:58:49 AM(UTC+0) | |
| 728 | 125102 | ▮▮▮@s.whatsapp.net Y.A. | Would love to have a business, but not a business that makes $300,000 a year, I'm trying to make money, lottery will do just fine for now! | | 5/31/2018 1:58:52 AM(UTC+0) | 7b975620-8c98-430d-bb47-27932dc956b2 |
| 729 | 125103 | ▮▮▮@s.whatsapp.net Heshl Abraham | He sent them some wafers that have an expiration dates, extremely good listing, so the second he added himself to the lisitng received 20 POs, and since he bought expired stuff he was able to get it for pennies_x005F_xD83D__x005F_xDE44__x005F_xD83D__x005F_xDE32__x005F_xD83D__x005F_xDE06_ | | 5/31/2018 2:00:39 AM(UTC+0) | |
| 730 | 125104 | ▮▮▮@s.whatsapp.net Heshl Abraham | Hahaha sure | | 5/31/2018 2:00:55 AM(UTC+0) | 274fe1e9-ff89-4cbb-946f-dd0fb3c5750b |
| 731 | 125105 | ▮▮▮@s.whatsapp.net Heshl Abraham | @18455707628 grocery stuff _x005F_xD83E__x005F_xDD13__x005F_xD83E__x005F_xDD42_ | | 5/31/2018 2:01:12 AM(UTC+0) | c03ecaf9-282a-4c83-a7c3-e66f86d1b222 |
| 732 | 125106 | ▮▮▮@s.whatsapp.net Heshl Abraham | He said that below 500 units it's really normal for a case pack _x005F_xD83D__x005F_xDE09_ | | 5/31/2018 2:09:07 AM(UTC+0) | |
| 733 | 125107 | ▮▮▮@s.whatsapp.net Heshl Abraham | On his old account, they once sent him back two trailer loads of speakers he over shipped | | 5/31/2018 2:09:41 AM(UTC+0) | |
| 734 | 125108 | ▮▮▮@s.whatsapp.net Heshl Abraham | So he agreed that it's probably because it was very big items | | 5/31/2018 2:10:03 AM(UTC+0) | |
| 735 | 125109 | ▮▮▮@s.whatsapp.net Heshl Abraham | But if it's small items they don't notice so fast | | 5/31/2018 2:10:20 AM(UTC+0) | |
| 736 | 125110 | ▮▮▮@s.whatsapp.net Heshl Abraham | This is good info, and I would never know about it if i wouldn't share the calculator | | 5/31/2018 2:12:00 AM(UTC+0) | |

When Amazon began to detect the defendants' scheme and suspend their accounts, Heshl Abraham advised the group that he had learned of an Amazon insider who would reactivate their accounts (with a chargeback) in exchange for a bribe. He stated:

5

| | | | | | |
|---|---|---|---|---|---|
| 2076 | 144216 | ███ @s.whatsapp.net Heshl Abraham | basically I bumped into ███, I worked with him in Prime Scuba, I haven't seen him since I left, in short it was very interesting that I found him, I haven't heard what's going on there in a long time, in short he told me that seller accounts, aside for when the vendor gets closed, the seller account is also closed because its mapped to the vendor account, so if the vendor account has fraud they close the seller account, you had given him a while back he had an issue with the UK and they gave them a rep for the UK accounts, they are located in the US so he was good with them and he helped us reopen the seller account and possibly the vendor account too, so it's interesting, you should know that, with the rep they gave him if you bribe him a little, he said that if you send a little envelope everything will be ok, you know that rep is an active rep and you can use him for good things | | 11/5/2018 2:43:45 AM(UTC+0) | 8e9e3bde-3f30-4d81-894b-de42dbf78a12.opus |
| 2077 | 144217 | ███ @s.whatsapp.net Heshl Abraham | I didn't get an amount but he told me that they opened the account within 12 months you need to give back a certain amount, like every month when they send POs, they don't pay the whole amount, every month they take off a portion until the entire amount is paid off | | 11/5/2018 2:46:31 AM(UTC+0) | b044d39e-876c-418c-b52b-36d1e37bd062.opus |
| 2078 | 144218 | ███ @s.whatsapp.net Heshl Abraham | this is funny because he said that he helped a lot of people with this rep, he said that his friend called him up saying that he has a seller account and that he has 50 employees and they locked the account and everyone is sitting around doing nothing and he can't send everyone home because this is his bread and butter and everything is locked and there is nothing to talk about, he spoke to this rep, paid a few bucks, sent him an envelope and everything was back in order, and nobody could thank him enough | | 11/5/2018 2:47:47 AM(UTC+0) | 483d36fb-6ba4-470f-a000-68abb79bb38b.opus |
| 2094 | 144234 | ███ @s.whatsapp.net Heshl Abraham | the thing is that he feels like he has a rep, he's good with the rep, he bribes him, everything is ok, you know what I mean, like he's his, he can help people out, its good news | | 11/5/2018 3:08:03 AM(UTC+0) | 07bea5e4-59c9-4275-bac0-a33deb7573ef.opus |
| 2095 | 144235 | ███ @s.whatsapp.net Heshl Abraham | I can make sure that he'll …I'll try my best, but I guess you can also quickly….them, one of the two, which one it is, you can start chatting with them and you will see right away I Guess, but I can ask him I'll try to ….. | | 11/5/2018 3:08:03 AM(UTC+0) | 440bee8e-fa0f-48aa-8a68-7608e2465eae.opus |

When Amazon ultimately shut down the defendants' accounts, it was Heshl Abraham who advised his co-defendants how to stymie Amazon's attempt to identify linked accounts through IP addresses or cookies:

| | | | | | |
|---|---|---|---|---|---|
| 2165 | 144331 | ███ @s.whatsapp.net Y.A. | Guys don't open more the one vendor on your computer they are linking accounts big time | | 11/5/2018 11:14:51 PM(UTC+0) | |
| 2166 | 144332 | ███ @s.whatsapp.net m | https://virmach.com/windows-remote-desktop-vps/ | | 11/5/2018 11:16:23 | |
| 2167 | 144333 | ███ @s.whatsapp.net Heshl Abraham | VPS company I use now | | 11/5/2018 11:16:44 PM(UTC+0) | af606912-bc8e-416c-a370-6c5d26c7a8f6 |
| 2168 | 144334 | ███ @s.whatsapp.net Zisha | This I know because they linked both of my vendor accounts | | 11/5/2018 11:19:37 PM(UTC+0) | f37b9946-89e8-4a41-bc3d-51746fa4866d |
| 2169 | 144335 | ███ @s.whatsapp.net Zisha | Was on same computer | | 11/5/2018 11:19:46 PM(UTC+0) | |
| 2170 | 144336 | ███ @s.whatsapp.net Y.A. | They are terrible | | 11/5/2018 11:41:32 PM(UTC+0) | |

Moreover, Heshl Abraham was defiant in the face of the victim's legal action:

| | | | | | |
|---|---|---|---|---|---|
| 2238 | 144664 | ▓▓▓▓@s.whatsapp.net Heshl Abraham | [email from Amazon stating that they have terminated their business relationship with the vendor and all further communication should be directed to their attorney] | 11/8/2018 1:47:05 AM(UTC+0) | 48072168-7f3d-4377-885a-e95f503e8902.jpg |
| 2239 | 144665 | ▓▓▓▓@s.whatsapp.net Heshl Abraham | Yes | 11/8/2018 1:47:23 AM(UTC+0) | f4e3038e-0440-49ea-8a1b-59ec54ef72a8 |
| 2240 | 144666 | ▓▓▓▓@s.whatsapp.net Y.A. | Interesting I didn't get any email like that | 11/8/2018 1:49:22 AM(UTC+0) | |
| 2241 | 144667 | ▓▓▓▓@s.whatsapp.net Heshl Abraham | Maybe because you didn't had any open cases | 11/8/2018 1:50:03 AM(UTC+0) | 205f2f26-8273-4c29-b055-472e83855cdd |
| 2242 | 144668 | ▓▓▓▓@s.whatsapp.net Heshl Abraham | They can go jump from the bridge they not getting back even a penny, and will still have plenty of relationship with Amazon in the near future _x005F_xD83E__x005F_xDD23_ | 11/8/2018 1:51:56 AM(UTC+0) | |
| 2243 | 144669 | ▓▓▓▓@s.whatsapp.net Shmule | You didn't had any open cases | 11/8/2018 1:52:06 AM(UTC+0) | 7d0fa037-84d9-4b4d-a675-89c355a13e08 |
| 2244 | 144670 | ▓▓▓▓@s.whatsapp.net Shmule | Exactly | 11/8/2018 1:52:14 AM(UTC+0) | b33e3ec6-ace4-47f7-9b48-63524953bed6 |
| 2245 | 144671 | ▓▓▓▓@s.whatsapp.net Heshl Abraham | Need someone to hack the lawyers emails and computers and wipe them clean out | 11/8/2018 2:13:30 AM(UTC+0) | |
| 2246 | 144672 | ▓▓▓▓@s.whatsapp.net Zisha | Let's do this | 11/8/2018 2:38:54 AM(UTC+0) | ee4a5bc8-5716-4c27-a329-85faa878721c |

Simply put, the defendants schemed for years regarding the most effective ways to defraud Amazon, were under no illusion that their conduct was wrong, and nevertheless persisted.

### B. Procedural History

The defendant was arrested on August 19, 2020, and charged by indictment with one count of conspiracy to commit wire fraud, in violation of Title 18, United States Code, Section 1349; one count of wire fraud (Count One), in violation of Title 18, United States Code, Section 1343 (Count Two), and one count of making financial transactions using criminal proceeds (Count Four), in violation of Title 18, United States Code, Section 1957.

### C. Plea Agreement, PSR, and Applicable Guidelines Range

On October 26, 2023, the defendant pleaded guilty to a Superseding Information that charged him with one count of conspiracy to commit wire fraud, in violation of Title 18, United States Code, Section 371. (PSR ¶ 4). The Superseding Information also included a forfeiture allegation and the defendant executed a Consent Preliminary Order of Forfeiture.

As set forth in the plea agreement between the parties, at the time of the defendant's plea the November 1, 2021 Guidelines Manual applied to this case. (PSR ¶ 4(a)). The agreement, however, also contained calculations under the November 1, 2023 Guidelines Manual, in the event sentencing occurred after the plea. (PSR ¶ 4(l)). Under the November 1, 2023 Guidelines Manual, pursuant to U.S.S.G. § 2B1.1(a)(1), the base offense level is six. At the time of the plea, the parties agreed that there was a loss to the victim but that it reasonably could not been determined;

7

accordingly, the gain to the defendant was used as an alternative measure of loss, pursuant to §2B1.1, Application Note 3(B). A 16-level increase is warranted, pursuant to U.S.S.G. § 2B1.1(b)(1)(J), because the defendant's gain was more than $1,500,000, but less than $3,500,000. A two-level increase is warranted, pursuant to 2B1.1.(b)((10)(c) because the defendant intentionally engaged in or caused conduct constituting sophisticated means in connection with the offense. Pursuant to U.S.S.G. § 4C1.1, the offense level decreases by two levels because the defendant meets the relevant criteria of that section. Assuming the defendant demonstrates acceptance of responsibility, a three-level reduction is warranted, pursuant to U.S.S.G. §3E1.1(a) and (b), resulting in a total offense level of 19. The defendant has no prior criminal history, resulting in a Criminal History Category of I. Accordingly, the applicable Guidelines range is 30 to 37 months' imprisonment. (PSR ¶ 4(a)-(l)).

In connection with his guilty plea, the defendant also executed a consent preliminary order of forfeiture with respect to Count 1 of the Superseding Information and agreed to forfeit, pursuant to 18 U.S.C. 981(a)(1)(C) and 28 U.S.C. 2461(c): ((i) a sum of money equal to $1,774,269 in United States currency, representing proceeds traceable to the commission of said offense (the "Money Judgment"); and (ii) all right, title and interest of the defendant in the following specific property: (1) all monies and funds held in JPMC bank account 906641022, held in the name of Heshl Abraham; (2) up to $450,000 held in JPMC account 562366513, in the name of Lifsha Abraham. As provided in the consent order, the amount reflected in the money judgment may be satisfied by the funds obtained from the specific property. The defendant also agreed to pay restitution in amount to be determined by the Court.

### D. Discussion

1. <u>Applicable Law</u>

The Guidelines still provide important guidance to the Court following *United States v. Booker*, 543 U.S. 220 (2005), and *United States v. Crosby*, 397 F.3d 103 (2d Cir. 2005). "[A] district court should begin all sentencing proceedings by correctly calculating the applicable Guidelines range," which "should be the starting point and the initial benchmark." *Gall v. United States*, 552 U.S. 38, 49 (2007). The Guidelines range is thus "the lodestar" that "'anchor[s]'" the district court's discretion. *Molina-Martinez v. United States*, 136 S. Ct. 1338, 1345-46 (2016) (quoting *Peugh v. United States*, 133 S. Ct. 2072, 2087 (2013)).

After making the initial Guidelines calculation, a sentencing judge must consider the factors outlined in Title 18, United States Code, Section 3553(a): (1) "the nature and circumstances of the offense and the history and characteristics of the defendant," 18 U.S.C. § 3553(a)(1); (2) the four legitimate purposes of sentencing, as set forth below, *see id.* § 3553(a)(2); (3) "the kinds of sentences available," *id.* § 3553(a)(3); (4) the Guidelines range itself, *see id.* § 3553(a)(4); (5) any relevant policy statement by the Sentencing Commission, *see id.* § 3553(a)(5); (6) "the need to avoid unwarranted sentence disparities among defendants," *id.* § 3553(a)(6); and (7) "the need to provide restitution to any victims," *id.* § 3553(a)(7). *See Gall*, 552 U.S. at 50 & n.6.

In determining the appropriate sentence, the statute directs judges to "impose a sentence sufficient, but not greater than necessary, to comply with the purposes" of sentencing, which are:

8

      (A)    to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
      (B)    to afford adequate deterrence to criminal conduct;
      (C)    to protect the public from further crimes of the defendant; and
      (D)    to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

18 U.S.C. § 3553(a)(2). To the extent that a district court imposes a sentence outside the range recommended by the Guidelines, it must "consider the extent of the deviation and ensure that the justification is sufficiently compelling to support the degree of the variance." *United States v. Cavera*, 550 F.3d 180, 189 (2d Cir. 2008) (en banc) (quoting *Gall*, 552 U.S. at 50) (internal quotation marks omitted).

    2.    <u>A Guidelines Sentence Is Appropriate</u>

        The Government respectfully submits that a sentence at the low end of the Guidelines range of 30 to 37 months' imprisonment would be fair and appropriate. The defendant seeks a sentence of probation—a downward departure of more than two years—despite building an entire business based on systematically defrauding another company, the very company that permitted him to create his own small business. A Guidelines sentence is necessary to address the seriousness of the defendant's crime, its effects on his victim, and to promote specific and general deterrence. Notwithstanding these aggravating factors, the defendant's personal situation warrants some mitigation. The defendant has six children under the age of ten, and their mother is unable to care for them alone. Taken together, these considerations warrant a sentence at the low-end of the Guidelines.

        First, the scheme here was serious. It was brazen, sophisticated, and of long duration. The defendant built an entire business—hiring employees, cultivating sources regarding Amazon's vendor and seller systems—for the sole purpose of bilking another business. As set forth in his communications with his co-defendants, Heshl Abraham devoted considerable time and effort, with his co-defendants, to testing and developing different ways to trick Amazon's systems in accepting and paying for products it had not agreed to pay for, and frequently at outrageous prices. Even worse, the defendants abused a victim that was providing them with the opportunity they purportedly most wanted: to open their own businesses and provide a good life for themselves and their families.

        What is worse is that there is no justification for the defendant's conduct other than greed. The defendants were open amongst themselves that they could have operated their businesses legitimately and enjoyed a comfortable lifestyle, but that was not what they wanted. The offense was not a momentary lapse of judgment or an act of desperation; it was a calculated effort to get rich quick by any means necessary.

        Second, the significant losses caused by the offense reflects its seriousness and the need for adequate punishment to promote respect for the law: Amazon lost millions through the

defendants' deceptive conduct by wildly overpaying for commonplace goods and the defendants' abuse of Amazon's systems led to substantial expenses on storage and destruction of, personnel hours to identify and root out the defendants' fraud and reconstruct Amazon's systems.

Third, an incarceratory sentence is necessary here to promote specific deterrence. To be sure, the defendant is a first-time offender. Nevertheless, the defendant was completely undeterred by Amazon suspending or freezing his accounts and continues to work in online and e-retailing since his arrest (PSR ¶ 86). The defendant received multiple warning signs and red flags that his conduct was fraudulent and illegal, and his response was to double down. Moreover, he was open to committing additional crimes in the service of keeping the scheme going: he expressed willingness to bribe an Amazon insider to ensure the continued operation of his accounts, as well as a desire to "hack" Amazon or its attorneys to ensure that the victim would never be able to recover the money that he had effectively stolen.

Fourth, a sentence within the Guidelines Range is necessary for general deterrence. The legislative history of 18 U.S.C. § 3553 demonstrates that "Congress viewed deterrence as 'particularly important in the area of white-collar crime.'" *United States v. Martin*, 455 F.3d 1227, 1240 (11th Cir. 2006) (citing S. Rep. No. 98-225, at 76 (1983), reprinted in 1984 U.S.C.C.A.N. 3182, 3259); *see also United States v. Mueffelman*, 470 F.3d 33, 40 (1st Cir. 2006) (deterrence of white-collar crime is "of central concern to Congress"). General deterrence is an important sentencing factor in fraud and white-collar cases because it is seen as effective. *Martin*, 455 F.3d at 1240 ("Because economic and fraud-based crimes are more rational, cool, and calculated than sudden crimes of passion or opportunity, these crimes are prime candidates for general deterrence.") (quotation marks and citation omitted). A Guidelines sentence, even one at the low end, will signal to others who think that crimes against corporations—even those as deep-pocketed as Amazon—are inconsequential that their conduct will be met with serious punishment. This is a particularly relevant aim of sentencing here, where the defendants' communications make clear that they had other acquaintances who engaged in similar fraudulent schemes against Amazon. A custodial sentence is required here precisely to ensure that others similarly situated—and whose have simply not yet been caught—are deterred from continuing their schemes.

Balanced against these considerations—and the chief reason for the Government's recommendation of a sentence at the low-end of the Guidelines—is the defendant's family situation. To be sure, all defendants have families and this is generally not a basis for reduction in sentence. Moreover, the defendant has a large extended family, who live nearby and with whom he maintains close relationships, to assist when he serves his sentence. The defendant's family, however is particularly large—he has six children under the age of ten—and his wife is not currently able to care for them adequately. Although these circumstances are not sufficient to warrant a non-custodial sentence, the Government submits that they warrant a sentence at the low-end of the Guidelines range.[5]

---

[5] Defense counsel submits that an independent ground for a non-custodial sentence is the fact that the "bulk of money" Heshl Abraham received from the fraud was given away to charity via Fidelity Charitable trust. (Def. Sent. Sub at 2). The Court should not consider this as a mitigating ground in crafting an appropriate sentence because the evidence reflects that the defendant primarily sought to make donations via charitable trusts to reclaim and ultimately

3. <u>Restitution</u>

On June 18, 2024, in connection with the sentencing of co-defendant Yoel Abraham, the Court requested additional information from the Government concerning amounts owed in restitution. The Government is currently preparing its response, which will address restitution owed by all defendants, and respectfully requests that the Court order restitution in an amount to be determined after these submissions to the Court have been made. To date, as set forth below in the Government's submission of June 5, 2024, the Government's calculation of restitution attributed $1,391,660.59 to Heshl Abraham.[6] The latter figure reflects Amazon's losses from unit manipulation for just the transactions attributable to Heshl Abraham in the 48 samples set forth in Exhibit A to Amazon's Victim Impact Letter: $1,375,035.59 for Zishe Abraham's vendor accounts and apportioned counsel fees in connection with the criminal matter of $16,625. It does not include the amounts claimed as a loss by Amazon on the 48 largest instances of "pure" overshipping.

The restitution figure reflects the fact that losses attributable to "pure" overshipping—overshipping in which there is no unit manipulation or product substitution—are difficult to calculate. Although the victim's systems were abused and payments were issued for unwanted goods, Amazon did receive certain goods and was able to re-sell them in many instances. This sets losses from "pure overshipping" apart from losses caused by unit manipulation/product substitution combined with overshipping. In the latter instances, Amazon was induced to pay such wildly inflated prices that it is inconceivable that those losses could have been recuperated.

E. Conclusion

For the foregoing reasons, the Government respectfully submits that a sentence at the low end of the stipulated Guidelines range would be fair and appropriate in this case.

Respectfully submitted,

DAMIAN WILLIAMS

United States Attorney

By: _____
Jilan J. Kamal
Assistant United States Attorney
(212) 637-2192

cc: Counsel by ECF

---

receive beneficial tax treatment funds placed in a charitable trust. *See*, Selected WhatsApp messages from USAO_00006030, attached hereto as Exhibit 7.

[6] Government Supplemental Sentencing Letter, ECF No. 189 at p. 4. The defendant does not contest that restitution must include the victim's attorney's fees incurred in connection with the Government's criminal investigation.